Good morning, Your Honor. Todd Jackson for the plaintiff appellate. Good morning, Your Honor. Matthew Wright for the Safford Unified School District and my associate, Dave Powley. Mr. Jackson.  May it please the Court, opposing counsel, I represent Savannah Redding, who is the plaintiff and appellate in this matter. On October 18, 2003, Savannah was 13 years old and an eighth grader at Safford Middle School. She had been an honor student for two years. She had no prior disciplinary record. Because another eighth grader was caught with ibuprofen and cold medicine and attempted to pass the blame to Savannah as the source of that medicine, Savannah was taken to the nurse's office, where this eighth grade adolescent was required to strip to her underwear and expose her breasts and pubic area to two adult school officials. This was done without any parental notice, without any further investigation of the accuracy of the eighth grader's accusation. It was done for the purported need to find the source of medicine that was no more dangerous than what any student could have obtained themselves from the corner drugstore. The trial court found that this did not violate Savannah's Fourth Amendment rights. We would respectfully submit that that finding is error. The case law is detailed in the briefs, and I won't recount it here in detail, other than to summarize it as this. The New Jersey v. TLO case, which all sides recognize sets the standard and did so in 1985, specified that the standard must ensure that the interests of students are invaded no more than necessary to achieve preservation of order at the school. The Kornfield case, Kornfield v. Consolidated High, elaborated and stated that as the intrusiveness of the search intensifies, so does the standard of reasonableness. So we cannot evaluate the reasonableness of the school officials' actions without first recognizing the extreme invasiveness of this search. This was not a urinalysis testing of a sports team. This was the case in several of the cases cited. It was not a locker. It was not a purse. It was not a pocket. It was not her clothes. This was effectively a nude search of an adolescent at what the courts have recognized as the most awkward and vulnerable age. Sotomayor, let's go back to what the school officials knew or didn't know. My impression is that one of the substances involved was prescription-strength. Am I wrong? Your Honor, it was a 400-milligram pill of ibuprofen, which in the ---- And you started out your argument by telling us that this was stuff that could be purchased at the corner drugstore. What I meant ---- It was prescription-strength ibuprofen, wasn't it? Well, in fact, Your Honor ---- Wasn't it? It was, Your Honor. The individual pills, yes. But I would point out ---- They knew more about your client than just that one individual had said she was the supplier of this prescription-strength. Well, with respect to ---- Right? They knew more about her than that, right? Well, in a general sense, Your Honor, but only in a general sense. And what I mean by that is this ---- that she had supplied the alcohol. Isn't that correct? Your Honor, there was that accusation made. Can you start with a yes or no when I ask you a question? Yes, Your Honor. There was that allegation. So they knew that? They did. But if I might elaborate, because I can't ---- And they knew the allegation was made by somebody, the other student, Jordan, who had given them information that turned out to be correct with regard to Marissa. Well, they ---- as to Marissa, that's correct. We're doing this in part because I think you've given us only a piece of the picture. And the school authorities had more to go on and acted based on more than you've given us. So we need to flesh out the picture. Understood. So they had the information from Jordan. They had the information that your client had let Marissa, the planner, for the purpose of Marissa being able to hide things. Is that correct? That's correct, Your Honor. And the accusation against your client was made by her friend, Marissa. That's correct, Your Honor. When ---- You don't think that adds up to reasonable suspicion that maybe your client's got pills she's not supposed to have? Oh, I left out the piece about they had the information from Jordan that pills were going to ---- were being distributed and that at lunchtime that day, several students were planning to take these pills, this being Jordan, who had previously been brought into school by his mother for having passed out after taking pills distributed at school. I think we need to break that down a little bit, Your Honor. You can break it down. But part of my problem with the approach you've taken so far is you break it down piece by piece, you lose the whole collection of facts that the school authorities were reacting to. And that's actually what I was attempting to get to, maybe a little slower than I needed to. Let me give it a try. And where I was leading with this was this, Your Honor, is that we believe under the case law that the reasonableness of the suspicion and the need has to be tied to the search that was undertaken and the invasiveness of that search. So if we start from the first step that this was the most invasive search possible, how do we link that back to that? Well, it really wasn't the most invasive search possible. Sort of a body cavity. They could have done a literal strip search. They could have done a body cavity search. They could have done it with somebody who wasn't the school nurse. I mean, there are lots of ways they could have made this more invasive under the circumstances. And given that your client was wearing clothes that didn't have any pockets that she was going to secrete something, there weren't a lot of other places to look. So it wasn't the most invasive search possible. We would submit that it was certainly a very invasive search, if not the most invasive search possible. Given that, and given her age and the context, which the courts say that we have to look at when judging the reasonableness of the suspicion, and getting to your point, Your Honor, about the reasonableness of that suspicion and that whole panoply of facts that the other side has cited as a basis for that suspicion, how many of those, Your Honor, tie to the search that was done? Very few. In fact, if you break it down and read it carefully on the affidavits, the only evidence that specifically ties the suspicion to the invasiveness of the search is the accusation that my client had pills. That's the only thing that gets them that justifies a search of her underwear. No. I'd add at least a couple more. The first being the link between your client and Marissa, because Marissa was the accuser. Marissa turns out to be not just another student. It turns out to be her good friend to whom your client had lent her platter for the purpose of Marissa hiding something, which turned out to include cigarettes, also against school policy. So it suggests that your client and Marissa aren't passing classmates. They are close. So Marissa is ratting on her good friend. Gives some credibility to Marissa's accusation. And then you throw in Jordan, who had turned out to have produced evidence that was corroborated before. He's the one that's reporting there's going to be something going down that day. And he's the one that puts Marissa and your client together at the party back in August, where he alleges, perhaps falsely, but he alleges that alcohol was served at your client's home by your client's parent. But again, Your Honor, nobody was going to find a bottle of alcohol in Savannah's underwear. But they know they have reason to believe that Jordan is accurate and that Marissa is close to your client and that Marissa and your client are willing to do things contrary to school policy because it was your client that lent Marissa the platter for the purpose of hiding the cigarettes. I would like to save a few minutes for rebuttal, Your Honor. I'll only respond to that in this fashion. If you look at those affidavits, look at what Jordan did not say. When he made his reports about the details of the prior activity and the details of who had provided drugs, who wasn't mentioned at all? Savannah. Not at all. He gave, apparently, a very detailed description of what had been going on. And the only thing, the only thing that he implicated Savannah on was the alcohol. And clearly, this search extended far beyond what's been justified as a search. But Marissa's the link to Savannah. Marissa's Savannah's good friend. Well, understood, Your Honor. But my point is this. When you narrow it down to what justified the search that was done, the only thing can be Marissa's word. And you compare it to the case law that has upheld searches and look at the investigation that was done after an accusation in those cases, it's night and day. If they the one search that led them to search her underwear was the accusation of one eighth grader, no follow-up investigation whatsoever. With that, if I could close, Your Honor, I'm safe to ask. We'll give you some time for rebuttal, but answer this question. Let's assume there was a Fourth Amendment violation. What's your best case that the school officials violated a clearly established right? I think the best case is this, Your Honor. In fact, it would be the case law that's cited in the other sites. When I ask for a case, that's what I mean. Oh. What's your best case?  If you give me just a minute, Your Honor. Establishes that there was a clearly established right. I would list the TLO case, the Kornfield case, and Williams v. I apologize. I don't have it at my fingertips. It's the Williams v. Ellington. Why don't you tell us those three cases when you get back to us for rebuttal? Absolutely. Just one quick question, if I might. Sure. If, assuming that there's a Fourth Amendment violation, do we reach the clearly established prong of the qualified immunity analysis, or do we remand that to the district court? The district court did not decide that, Your Honor. I know that. That's why I'm asking. I think my best answer to that is it's probably within your discretion. It is a legal issue of law. There are not fact issues relating to that question in the record before us. Nonetheless, it was never reached, evaluated, and addressed by the district court, and therefore, in my view, would be appropriate for remand. Okay. We'll hear from the school district at this time. Yes, Your Honor. Thank you. This case is about protecting the reasonable acts of a school official who is trying to discharge his custodial responsibility of protecting the safety and the health of his students. In addition to that, remember, he's also charged with the responsibility of maintaining order and discipline on the school campus. And so when we judge those facts, the Court very clearly says we're going to accommodate that important interest, that important governmental interest of keeping these kids safe. And the way we're going to accommodate that is we're going to relax the standard on the decision of whether to search. And that standard is reasonableness under the circumstances. And that's why the questions asked by the Court are right on in terms of the analysis here, because under the reasonableness of the totality of the circumstances, the search clearly was warranted. Well, and I'll pause there, too, because I look at this and I don't seem to be the clearest case for your side either. I mean, it's true that there had been something circulated before that allegedly caused Jordan to pass out. But it's also true that the school officials knew before they conducted this search that they weren't dealing with anything other than ibuprofen and some over-the-counter cold remedy. So how intrusive can you fairly be if you know what you're dealing with is something that, if not entirely over-the-counter, it's basically Tylenol? Right. Well, Your Honor, what it is is a prescription-level pain reliever and anti-inflammatory. You can take two Tylenols and get to the same level. I mean, it's 400 milligrams and a Tylenol is, what, 200 milligrams, so. But I'm not sure if it's the same chemical ingredient, Your Honor. And that's the point, is, again, the reason for the relaxed standard and the reasonableness standard as opposed to final cause. Well, why don't you know the answer to that question of whether it's the same chemical ingredient? I mean, it's obviously a prescription-level painkiller. Well, but the level of danger is somewhat important in this case in terms of what the level of intrusiveness of the search that would be permitted. It is somewhat important. It is a factor to consider. But we have to back it up. But you don't know the answer. But you don't know the answer to it. No, Your Honor. All I know is that it's a prescription drug that's required by medical prescription in order to take. And it is for pain relief. And it is for anti-inflammation. And that's what the Poison Control Center said. But we have to back up that analysis and ask ourselves, what did Mr. Wilson, the assistant principal, know at the time that he's making this call on the run and on the fly? He doesn't have the ability and the time, other than to have the nurse call Poison Control and say, what kind of medication is this? And the response he gets back is, it's a prescription drug. In addition to that, Your Honor ---- Is it your position that if we didn't have this history of her supplying alcohol and all these other instances, that the search would have been justified just on the basis of the ibuprofen? The search would have been justified on the basis of the prescription-level drug medication because of the speed and efficiency with which these administrators have to work. And that's recognized in Williams. It says we're going to allow administrative discretion in these kinds of decisions because we're not going to put a principal to the task of trying to quantify or make a qualitative decision as to what kind of drug is being used. What he does know is a couple of years earlier, almost the exact identical situation occurred. A suit ---- of the students saying, I got the Tylenol from her. Do you think the level of intrusiveness would have been justified? It becomes more suspicious at that point. And the reason is, Your Honor, is because I want to see cooperation of the witness's statement. And that's where I look to the totality of the circumstances in this case. Is your answer no, then? I think it's a closer question. I guess my answer would be that because the health and safety of the students is still at issue, I still think it would be justified. But it would have to be ---- I mean, it would be put under greater scrutiny, Your Honor. How many middle schools are there in Stafford? I believe there are ---- I don't know, Your Honor. I believe there's two. But I don't know. This is one of two? I believe so. How big is the town? The town of Stafford, 15,000, 20,000 people. How far away were the parents? Don't know, Your Honor. Was there any reason offered why the parents weren't notified? Yes, Your Honor. The parent was not notified because Principal or Assistant Principal Wilson felt like he was dealing with an exigency, that he had to collect the pills before these students can take them, including Savannah. Well, if you've got Savannah in tow, why not sit her down, observed, call the parent? Well ---- I don't think harm would fall to the school district by doing that. I don't think there would have been necessarily harm, although I would like to add some background facts as a footnote to that. When we called Savannah's parents, and her, excuse me, Savannah's mother, about the alcohol incident, supplying alcohol to students at the pre-dance party, her mother summarily dismissed it. Right. But why ---- when you're going to conduct a strip search, which is the most intrusive and potentially embarrassing search, why wouldn't it be better policy when you have the person in custody to call the parent? Well, it might certainly make the student feel more comfortable, and it might be a policy that the Court would consider, but, Your Honor, that's not the standard. It wasn't the standard under which the principal was working on that day. We do not have to choose the least intrusive means to conduct the search. We just have to act reasonable. And the fact that there might have been lesser intrusive means, such as having the mother there, making her feel more comfortable, doesn't change the fact analysis as to the reasonableness of the scope of the search. Could the school nurse have conducted a body cavity search? No, Your Honor. Why? Because that would be too intrusive. How do you draw the line? I think you have to draw the line based on what the law says, which is these guys are going to have to use common sense, and that's the best we can give you. That's the best guidance we can give you. Reasonable is under the circumstances and use common sense. I think a body cavity search would go too far. A strip search of a 13-year-old girl is not intrusive. Your Honor, it is intrusive, but it's reasonably intrusive. It's not excessively intrusive. It's the same type of search that was done in Singleton, and all Singleton had on him was money. We have a kid who has potentially drugs on her, pocketless clothes. She could easily be concealing that drug on her person. She could easily take that drug in a panic to try to hide the evidence. It's important to act under this exigency with swiftness and to have administrative discretion to do so, because we have a custodial responsibility. If we don't find that drug and we let her go, we decide not to search, and she takes the drug and gets harmed because of our custodial responsibility, then we get sued because we acted unreasonable for not finding the drug on her and protecting her. So it's a conundrum. It could have been hidden in a body cavity, couldn't it? I'm sorry, sir? The drug could have been hidden in a body cavity. It certainly could have, but it's a ---- By not conducting a body cavity search, you're exposing the school to the same danger, right?  But the difference is the accessibility to the drug. It's going to be, I presumably, difficult for her to retrieve from a body cavity than it is if she's just got it secreted in her bra or in her underpants. Also, counsel mentioned the ---- Why does that make any difference? Well, it could make a difference, Your Honor, because, remember, we're trying to also protect Savannah. And one question that was asked was why not have the parents there? And the answer is it's because there's an exigency that he's dealing with. Again, whether or not he made the right call in retrospect ---- We don't know whether the parents were five minutes away, ten minutes away, an hour away, not present. No, but we do know that she summarily dismissed the alcohol issue. And we do know that she ---- Why does that make any difference? You might say ---- Because what if the mother helped her secret the drug when she got there? That doesn't necessarily ---- I mean, calling the parents, having them in the room, doesn't necessarily mean that you have to take the school nurse out. It just means you're informing the parents when you're going to do something that's the reason why you wouldn't call the parents under this. You're saying you had this need, but you had the student in confinement. You had people present with her all the time. You talk about being able to pull this stuff out and take it, but you have people there all the time. There's no reason that you couldn't add a parent to that equation. I agree with you. There's no reason you can't. But the constitutional standard doesn't say you have to. It says you do not have to use the least restrictive means. You just have to act reasonable under scope. The item sought was a small item, Your Honor. It may go to the reasonableness of the search, however. We certainly said in the context of Miranda and other constitutional rights with juveniles that having a parent there makes a difference. Judge Thomas, you are correct on that, that it certainly would make them the ---- it would make a difference in making the student certainly more comfortable. But that doesn't change the fact analysis as to the reasonableness of the scope of the search under these circumstances and under the totality of the circumstances and because of our custodial responsibilities to this student. I think we understand your argument. Thank you for coming in today. Thank you, Your Honor. I'll give you a minute for rebuttal. Thanks, Your Honor. Briefly, Singleton involved the search. I thought you were going to start with three cases. Oh, you're right, Your Honor. I apologize. TLO, Williams v. Ellington, and the Cornfield case. All of them. All of them?   Go right ahead. I guess I would wrap up with this. Consider where the logic of the finding at the trial court and the position of the other side takes us. A small pill, a non-narcotic pill, an accusation by a student confronted with her own guilt with respect to that pill, admittedly some accusations of other misbehavior, but certainly not the type of exigency and size of the item at issue. Clearly, if we allow a search that takes us anywhere this pill may be, it opens the door for a body cavity search. There's got to be a line drawn somewhere, and I guess it's our position, Your Honor, that where that line is drawn in this circumstance is with a non-narcotic and with a non-narcotic drug, a non-parental search, the school district went too far. Okay. Thanks, Your Honor. Thank you both for your arguments. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is Hansen against the U.S. Treasury Department.
judges: Hawkins, Thomas, Clifton